IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
EASTERN DIVISION

WENDY R. CHILDERS,

  Plaintiff,

vs.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

  Defendant.

No. C12-2015

RULING ON JUDICIAL REVIEW

## TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

II.   PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . 2

III.   PRINCIPLES OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . 3

IV.   FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5
   A.   Childers' Education and Employment Background . . . . . . . . . . . . . 5
   B.   Administrative Hearing Testimony . . . . . . . . . . . . . . . . . . . . . . 5
     1.   Childers' Testimony . . . . . . . . . . . . . . . . . . . . . . . . 5
     2.   Vocational Expert's Testimony . . . . . . . . . . . . . . . . . . 7
   C.   Childers' Medical History . . . . . . . . . . . . . . . . . . . . . . . . . . 7

V.   CONCLUSIONS OF LAW . . . . . . . . . . . . . . . . . . . . . . . . . . 10
   A.   ALJ's Disability Determination . . . . . . . . . . . . . . . . . . . . . . . 10
   B.   Objections Raised by Claimant . . . . . . . . . . . . . . . . . . . . . . . 12
     1.   Listing 12.05C . . . . . . . . . . . . . . . . . . . . . . . . . . 12
     2.   Fully and Fairly Developed Record . . . . . . . . . . . . . . . 16
   C.   Reversal or Remand . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

VI.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

VII.   ORDER . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

## I. INTRODUCTION

This matter comes before the Court on the Complaint (docket number 3) filed by Plaintiff Wendy R. Childers on March 1, 2012, requesting judicial review of the Social Security Commissioner's decision to deny her application for Title XVI supplemental security income ("SSI") benefits. Childers asks the Court to reverse the decision of the Social Security Commissioner ("Commissioner") and order the Commissioner to provide her SSI benefits. In the alternative, Childers requests the Court to remand this matter for further proceedings.

## II. PROCEDURAL BACKGROUND

On March 2, 2009, Childers applied for SSI benefits. In her application, Childers alleged an inability to work since June 18, 2002 due to mental retardation, learning disabilities, depression, and tumors on her brain and kidneys.[1] Childers' application was denied on June 16, 2009. On August 24, 2009, her application was denied on reconsideration. Childers timely requested an administrative hearing before an Administrative Law Judge ("ALJ"). On May 6, 2010, Childers appeared in person with her attorney before ALJ Trace Baldwin for an administrative hearing.[2] Childers and vocational expert Evelyn R. Hartman testified at the hearing. In a decision dated September 21, 2010, the ALJ denied Childers' claim. The ALJ determined that Childers was not disabled and not entitled to SSI benefits because she was functionally capable of performing work that exists in significant numbers in the national economy. Childers appealed the ALJ's decision. On January 10, 2012, the Appeals Council denied Childers'

---

[1] At the administrative hearing, Childers amended her disability onset date to February 9, 2009, her protective filing date for SSI benefits. *See* Administrative Record at 10, 31.

[2] The administrative hearing took place in Paris, Texas. According to the record, Childers resided in Oklahoma at the time of the hearing. At some point prior to the instant appeal, Childers moved to Waterloo, Iowa. At the time of the hearing, Childers was represented by Attorney Polly Murphy. On appeal, Childers is represented by Attorney Thomas A. Krause.

request for review. Consequently, the ALJ's September 21, 2010 decision was adopted as the Commissioner's final decision.

On March 1, 2012, Childers filed this action for judicial review. The Commissioner filed an Answer on June 4, 2012. On July 9, 2012, Childers filed a brief arguing that there is not substantial evidence in the record to support the ALJ's finding that she is not disabled and that she is functionally capable of performing work that exists in significant numbers in the national economy. On September 7, 2012, the Commissioner filed a responsive brief arguing that the ALJ's decision was correct and asking the Court to affirm the ALJ's decision. On June 19, 2012, both parties consented to proceed before a magistrate judge in this matter pursuant to the provisions set forth in 28 U.S.C. § 636(c).

## III. PRINCIPLES OF REVIEW

Pursuant to 42 U.S.C. § 1383(c)(3), the Commissioner's final determination after an administrative hearing not to award SSI benefits is subject to judicial review to the same extent as provided in 42 U.S.C. § 405(g). 42 U.S.C. § 1383(c)(3). 42 U.S.C. § 405(g) provides the Court with the power to: "[E]nter . . . a judgment affirming, modifying, or reversing the decision of the Commissioner . . . with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g). "The findings of the Commissioner . . . as to any fact, if supported by substantial evidence, shall be conclusive . . ." *Id.*

The Court will "affirm the Commissioner's decision if supported by substantial evidence on the record as a whole." *Anderson v. Astrue*, 696 F.3d 790, 793 (8th Cir. 2012) (citation omitted). Substantial evidence is defined as "'less than a preponderance but . . . enough that a reasonable mind would find it adequate to support the conclusion.'" *Id.* (quoting *Jones v. Astrue*, 619 F.3d 963, 968 (8th Cir. 2010)); *see also Brock v. Astrue*, 674 F.3d 1062, 1063 (8th Cir. 2010) ("Substantial evidence is evidence that a reasonable person might accept as adequate to support a decision but is less than a preponderance.").

In determining whether the ALJ's decision meets this standard, the Court considers "all of the evidence that was before the ALJ, but it [does] not re-weigh the evidence."

3

*Vester v. Barnhart*, 416 F.3d 886, 889 (8th Cir. 2005) (citation omitted). The Court not only considers the evidence which supports the ALJ's decision, but also the evidence that detracts from his or her decision. *Perks v. Astrue*, 687 F.3d 1086, 1091 (8th Cir. 2012); *see also Cox v. Astrue*, 495 F.3d 614, 617 (8th Cir. 2007) (Review of an ALJ's decision "extends beyond examining the record to find substantial evidence in support of the ALJ's decision; [the court must also] consider evidence in the record that fairly detracts from that decision."). In *Culbertson v. Shalala*, 30 F.3d 934, 939 (8th Cir. 1994), the Eighth Circuit Court of Appeals explained this standard as follows:

> This standard is 'something less than the weight of the evidence and it allows for the possibility of drawing two inconsistent conclusions, thus it embodies a zone of choice within which the [Commissioner] may decide to grant or deny benefits without being subject to reversal on appeal.'

*Id.* (quoting *Turley v. Sullivan*, 939 F.2d 524, 528 (8th Cir. 1991), in turn quoting *Bland v. Bowen*, 861 F.2d 533, 535 (8th Cir. 1988)). In *Buckner v. Astrue*, 646 F.3d 549 (8th Cir. 2011), the Eighth Circuit further explained that a court "'will not disturb the denial of benefits so long as the ALJ's decision falls within the available 'zone of choice.'" *Id.* at 556 (quoting *Bradley v. Astrue*, 528 F.3d 1113, 1115 (8th Cir. 2008)). "'An ALJ's decision is not outside that zone of choice simply because [a court] might have reached a different conclusion had [the court] been the initial finder of fact.'" *Id.* Therefore, "even if inconsistent conclusions may be drawn from the evidence, the agency's decision will be upheld if it is supported by substantial evidence on the record as a whole." *Guilliams*, 393 F.3d at 801 (citing *Chamberlain v. Shalala*, 47 F.3d 1489, 1493 (8th Cir. 1995)); *see also Wildman v. Astrue*, 596 F.3d 959, 964 (8th Cir. 2010) ("If substantial evidence supports the ALJ's decision, we will not reverse the decision merely because substantial evidence would have also supported a contrary outcome, or because we would have decided differently."); *Moore v. Astrue*, 572 F.3d 520, 522 (8th Cir. 2009) ("'If there is substantial evidence to support the Commissioner's conclusion, we may not reverse even though there

4

may also be substantial evidence to support the opposite conclusion.' *Clay v. Barnhart*, 417 F.3d 922, 928 (8th Cir. 2005).").

## IV. FACTS

### A. Childers' Education and Employment Background

Childers was born in 1981. She attended high school through the tenth grade. She has not earned a GED. At the administrative hearing, the ALJ inquired as to Childers' basic skills:

> Q: Are you able to read, write, add, subtract?
> A: Not that well.
> Q: Okay. Well, what kind of -- can you write out a grocery list?
> A: Somewhat.
> Q: When you go to the grocery store and you pay for something, do you know how much change you're supposed to get back?
> A: Yes sir.
> Q: Can you read a newspaper article?
> A: No sir.
> Q: When you were in school, were you in regular classes or special?
> A: No sir, I was in special ed.
> Q: Were they all special ed?
> A: I think so; I'm not for sure.

(Administrative Record at 35.)

The record contains a detailed earnings report for Childers. The report covers the time period of 1994 to 2009. Childers has minimal earnings during this time period. She earned $281.97 in 1999, and $473.08 in 2000. Otherwise, she had no earnings during the time period covered in the earnings report.

### B. Administrative Hearing Testimony

#### 1. Childers' Testimony

At the administrative hearing, Childers' attorney asked Childers to discuss her difficulties with headaches. Childers stated that she wakes up every morning with a

5

headache. According to Childers, the intensity of her headaches vary, but the worst headaches cause her to feel nauseous or sick to her stomach. She stated that she feels this way at least once per week. She explained her headache relief as follows:

> I've got to take like Motrin or Tylenol or something and it still don't help. I've got to lay down and rest and it will finally go away, just like lay on a couch and watch TV or something and it will go away.

(Administrative Record at 38.)

Childers' attorney also asked Childers to discuss her mental health treatment. Childers testified that she has difficulty with depression and anxiety. She stated that "I just get where I don't want to be around nobody. I just want to be by myself."[3] Childers further stated that she often feels sad, angry, and mad. When asked why she often feels that way, Childers replied "I don't know. It just happens like that. I don't -- I can't explain why."[4]

Childers' attorney also asked Childers to describe her typical day. Childers stated that "I usually just sit around the house and take care of the baby."[5] When asked how she spent a typical day before her baby was born, Childers replied "[j]ust sitting around."

Childers also discussed her limited work history. In 1999, she worked for about two weeks as a motel housekeeper. Her other job was working at a fast food restaurant for about one month in 2000. When asked why she only worked at those jobs for a short period of time, Childers replied that "I just couldn't comprehend what I was -- they was trying to teach me and I got frustrated and quit."[6] Lastly, Childers' attorney asked

---

[3] Administrative Record at 40.

[4] *Id.* at 41.

[5] *Id.* at 42.

[6] *Id.* at 44.

Childers what presently keeps her from working. Childers answered "I can't concentrate and my headaches get so bad that I can't do it."[7]

### 2. Vocational Expert's Testimony

At the hearing, the ALJ provided vocational expert Evelyn R. Hartman with a hypothetical for an individual with "no exertional limitations but the following psychological limitations would exist. The individual would be capable of performing only simple repetitive tasks and they must have little to no public contact."[8] The vocational expert testified that under such limitations, Childers could perform the following work: (1) laundry folder (1,400 positions in Oklahoma and 18,100 positions in the nation), (2) kitchen helper (3,300 positions in Oklahoma and 213,100 in the nation), and (3) file room assembler (260 positions in Oklahoma and 62,000 positions in the nation). The ALJ provided the vocational expert with a second hypothetical, similar to the first hypothetical, except that the individual "must engage in low stress work. By that, I mean the individual could not tolerate stresses of work, which would include attending to tasks, maintaining persistence of pace, completing tasks in a timely manner, and maintaining a normal eight-hour workday."[9] The vocational expert testified that under such a limitations Childers would be precluded from competitive employment.

### C. Childers' Medical History

On March 19, 2009, Childers sought mental health treatment complaining of depression and mood swings. The record contains a "Screening and Assessment" report for Childers. In the report, Childers indicated that she was having difficulty with depression "since she stopped taking her medication when she was released from prison

---

[7] *Id.* at 47.

[8] *Id.* at 55.

[9] Administrative Record at 55-56.

in 02/09."[10] Childers described her symptoms as including crying spells, feelings of sadness, hopelessness, and helplessness, anxiety attacks, and sleeping 2-3 hours at night. The report provided that Childers has difficulties with coping skills, anger, anxiety, memory, concentration, and impulse control. Childers was diagnosed with major depressive disorder and generalized anxiety disorder. The report concluded that Childers' prognosis for improvement was "fair."

The record contains another mental health report for Childers, dated April 9, 2009. In the report, Childers was diagnosed with major depressive disorder and generalized anxiety disorder. According to the report, Childers has "severe" problems in the area of friendship and social relations. Specifically, Childers stated that she "has no social interaction skills and is very nervous around others."[11] Childers further stated that she "is having feelings of daily depression causing marked impairment in her ability to work or [function socially]."[12] The report also indicated that Childers has difficulties with memory, concentration, and impulse control. Childers stated that "haiving [sic] both poor memory skills and poor concentration skills . . . causes [her] to loose [sic] focuse [sic] on day to day tasks."[13] It was recommended in the report that Childers undergo mental health rehabilitation.

On June 16, 2009, Childers met with Dr. C. Robin McGirk, Ph.D., for a psychological evaluation. Dr. McGirk reviewed Childers' personal history:

> [Childers] stated that she completed the 10th grade and left school because of what she described as 'family problems.' She indicated that she married at that time and remained with her husband until he was sentenced to prison along with her.

---

[10] *Id.* at 243. Childers was in prison for 20 months, stemming from a charge of larceny of copper. *See id.* at 245.

[11] Administrative Record at 439.

[12] *Id.*

[13] *Id.* at 440.

8

> She stated that her ex-husband was involved in stealing copper wire, adding that she was considered an accessory and sentenced to 20 months, during which time she lost her disability.

(Administrative Record at 327.) In speaking with Childers, Dr. McGirk noted that "[h]er level of word knowledge is at a level which is within a borderline range."[14] Dr. McGirk further noted that Childers was "slow" to respond to tasks that were given to her, and struggled with them, but "did not give up easily." Dr. McGirk also pointed out that Childers had "recently been diagnosed with a brain tumor as well as the presence of tumors in both kidneys, adding that one result has been the onset of headaches."[15] On intelligence testing, Childers produced a verbal IQ score of 72, a performance IQ score of 76, and a full scale IQ score of 72. Childers' IQ scores place her in the borderline range. Dr. McGirk noted weaknesses in concentration abilities and calculation-oriented tasks. Dr. McGirk opined that "[n]on-verbal reasoning abilities were also quite low, suggesting that reasoning abilities of both an [sic] verbal and non-verbal level are within rather low limits."[16] Dr. McGirk diagnosed Childers with borderline intellectual functioning. Dr. McGirk also indicated that Childers may have an anxiety disorder.

On June 17, 2009, Dr. Dorothy Millican-Wynn, Ph.D., reviewed Childers' medical records and provided Disability Determination Services with a Psychiatric Review Technique and mental residual functional capacity ("RFC") assessment for Childers. On the Psychiatric Review Technique assessment, Dr. Millican-Wynn diagnosed Childers with borderline intellectual functioning. Dr. Millican-Wynn determined that Childers had the following limitations: mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and mild difficulties in maintaining concentration,

---

[14] Id. at 327.

[15] Administrative Record at 328.

[16] Id. at 329.

persistence, or pace. On the mental RFC assessment, Dr. Millican-Wynn determined that Childers was moderately limited in her ability to: carry out detailed instructions, maintain attention and concentration for extended periods, and interact appropriately with the general public. Dr. Millican-Wynn concluded that "[Childers] would be capable of performing simple repetitive tasks with little to no public contact."[17]

## V. CONCLUSIONS OF LAW

### A. ALJ's Disability Determination

The ALJ determined that Childers is not disabled. In making this determination, the ALJ was required to complete the five-step sequential test provided in the social security regulations. *See* 20 C.F.R. § 416.920(a)-(g); *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *McCoy v. Astrue*, 648 F.3d 605, 611 (8th Cir. 2011); *Page v. Astrue*, 484 F.3d 1040, 1042 (8th Cir. 2007). The five steps an ALJ must consider are:

> (1) whether the claimant is gainfully employed, (2) whether the claimant has a severe impairment, (3) whether the impairment meets the criteria of any Social Security Income listings, (4) whether the impairment prevents the claimant from performing past relevant work, and (5) whether the impairment necessarily prevents the claimant from doing any other work.

*Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (citing *Eichelberger*, 390 F.3d at 590); *Perks*, 687 F.3d at 1091-92 (discussing the five-step sequential evaluation process); *Medhaug v. Astrue*, 578 F.3d 805, 813-14 (8th Cir. 2009) (same); *see also* 20 C.F.R. § 416.920(a)-(g). "If a claimant fails to meet the criteria at any step in the evaluation of disability, the process ends and the claimant is determined to be not disabled." *Pelkey v. Barnhart*, 433 F.3d 575, 577 (8th Cir. 2006) (citing *Goff*, 421 F.3d at 790, in turn quoting *Eichelberger*, 390 F.3d at 590-91).

In considering the steps in the five-step process, the ALJ:

---

[17] *Id.* at 348.

> first determines if the claimant engaged in substantial gainful activity. If so, the claimant is not disabled. Second, the ALJ determines whether the claimant has a severe medical impairment that has lasted, or is expected to last, at least 12 months. Third, the ALJ considers the severity of the impairment, specifically whether it meets or equals one of the listed impairments. If the ALJ finds a severe impairment that meets the duration requirement, and meets or equals a listed impairment, then the claimant is disabled. However, the fourth step asks whether the claimant has the residual functional capacity to do past relevant work. If so, the claimant is not disabled. Fifth, the ALJ determines whether the claimant can perform other jobs in the economy. If so, the claimant is not disabled.

*Kluesner v. Astrue*, 607 F.3d 533, 537 (8th Cir. 2010). At the fourth step, the claimant "bears the burden of demonstrating an inability to return to [his] or her past relevant work." *Pate-Fires v. Astrue*, 564 F.3d 935, 942 (8th Cir. 2009) (citing *Steed v. Astrue*, 524 F.3d 872, 875 n. 3 (8th Cir. 2008)). If the claimant meets this burden, the burden shifts to the Commissioner at step five to demonstrate that "given [the claimant's] RFC [(residual functional capacity)], age, education, and work experience, there [are] a significant number of other jobs in the national economy that [the claimant] could perform." *Brock*, 674 F.3d at 1064 (citing *Ellis v. Barnhart*, 392 F.3d 988, 993 (8th Cir. 2005)). The RFC is the most an individual can do despite the combined effect of all of his or her credible limitations. 20 C.F.R. § 416.945. The ALJ bears the responsibility for determining "'a claimant's RFC based on all the relevant evidence including the medical records, observations of treating physicians and others, and an individual's own description of his [or her] limitations.'" *Boettcher v. Astrue*, 652 F.3d 860, 867 (8th Cir. 2011) (quoting *Moore*, 572 F.3d at 523); 20 C.F.R. § 416.945.

The ALJ applied the first step of the analysis and determined that Childers had not engaged in substantial gainful activity since February 9, 2009. At the second step, the ALJ concluded from the medical evidence that Childers had the following severe impairments: anxiety, depression, and borderline mental retardation. At the third step, the ALJ found

that Childers did not have an impairment or combination of impairments listed in 20 C.F.R. Pt. 404, Subpt. P, App. 1. At the fourth step, the ALJ determined Childers' RFC as follows:

> [Childers] has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: [Childers] is limited so [sic] simple, repetitive tasks which involve little to no public contact. In other words, [Childers] can perform simple, unskilled, non-public work at all exertional levels.

(Administrative Record at 15.) Also at the fourth step, the ALJ determined that Childers had no past relevant work. At the fifth step, the ALJ determined that based on her age, education, previous work experience, and RFC, Childers could work at jobs that exist in significant numbers in the national economy. Therefore, the ALJ concluded that Childers was not disabled.

### B. Objections Raised by Claimant

Childers argues that the ALJ erred in two respects. First, Childers argues that the ALJ erred by failing to find that she was presumptively disabled because she equals Listing § 12.05C for mild mental retardation. Second, Childers argues that the ALJ did not fully and fairly develop the record because he failed to obtain her prior claim establishing that she was presumptively disabled under the Listing for mild mental retardation.

#### 1. Listing 12.05C

Listing 12.05C provides in pertinent part:

> Mental retardation: Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22.
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
>
> . . .

> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function.

20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.05. In *Maresh v. Barnhart*, 438 F.3d 897 (8th Cir. 2006), the Eighth Circuit summarized the requirements of Listing 12.05C as follows:

> a claimant must show: (1) a valid verbal, performance, or full scale IQ of 60 through 70; (2) an onset of the impairment before age 22; and (3) a physical or other mental impairment imposing additional and significant work-related limitation of function.

*Id.* at 899.

Here, Childers scored a verbal IQ score of 72, a performance IQ score of 76, and a full IQ score of 72 in June 2009. Clearly, Childers does not meet the first requirement of Listing 12.05C, as none of her IQ scores are between 60 and 70. In his decision, the ALJ noted that:

> Finally, the 'paragraph C' criteria of listing 12.05 are not met because [Childers] does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. [Childers'] IQ scores were over 70.

(Administrative Record at 14.) While there is no error in the ALJ's conclusion that Childers does not *meet* the requirements of Listing 12.05C, Childers argues that the ALJ erred because he did not address whether her impairments *equaled* Listing 12.05C. Childers is correct.

In *Shontos v. Barnhart*, 328 F.3d 418 (8th Cir. 2003), the Eighth Circuit Court of Appeals pointed out that the Commissioner issued instructions for determining medical equivalence in the Program Operations Manual System ("POMS"). *Id.* at 424. The applicable POMS provision for determining medical equivalence and mental retardation under Listing 12.05C states in pertinent part:

13

> Listing 12.05C is based on a combination of an IQ score with an additional significant mental or physical impairment. The criteria of this paragraph are such that a medical equivalence determination would very rarely be required. However, slightly higher IQ's (e.g. 70-75) in the presence of other physical or mental disorders that impose additional and significant work-related limitation or function may support an equivalence determination. It should be noted that generally the higher the IQ, the less likely medical equivalence in combination with another physical or mental impairment(s) can be found.

POMS § DI 24515.056. In *Shontos*, the claimant had an IQ score of 72, and medical evidence from her treating doctors which indicated that she had difficulty with anxiety and depression which would interfere with her ability to work. 328 F.3d at 424. The ALJ who considered Shontos' claim did not consider the POMS guidelines. *Id.* The Eighth Circuit determined that the ALJ's failure to consider the POMS guidelines was error. *Id.* Specifically, the Eighth Circuit found that "[a]lthough POMS guidelines do not have legal force, and do not bind the Commissioner, this court has instructed that an ALJ should consider the POMS guidelines." *Id.* (citing *Berger v. Apfel*, 200 F.3d 1157, 1161 (8th Cir. 2000); *List v. Apfel*, 169 F.3d 1148, 1150 (8th Cir. 1999)). The Eighth Circuit concluded that Shontos' impairments, including borderline intellectual functioning, psychiatric affective disorders, and physical disabilities, were medically equivalent to Listing 12.05C, and remanded the case for an award of benefits. *Shontos*, 328 F.3d at 427.

Similar to *Shontos*, Childers had a verbal IQ score of 72 and a full IQ score of 72 in June 2009. Dr. McGirk diagnosed Childers with borderline intellectual functioning. Specifically, Dr. McGirk found that:

> [Childers'] level of word knowledge is at a level which is within a borderline range[.] . . . [Childers] presented as relatively unsophisticated e.g. exhibiting a rather crooked smile and awkward facial expressions, as well as being rather slow to respond to many of the tasks she was given. She also

14

> struggled with most of the tasks, although it is important to note that she did not give up easily.
>
> Abstract reasoning abilities were in a borderline range[.] . . . It would be important to be able to compare her score at this time in that area with what she might have obtained when previously evaluated i.e. while in high school. Within this vein, she indicated that she had been given tests similar [to] this one when evaluated during her time in high school and earlier, in order to assign her to special education classes. She recalls being in such classes from the second or third grade on. . . .
>
> She also reports that she has a long history of becoming anxious over the slightest thing and has great deal of cognitive activity i.e. tending to worry about things "that I shouldn't be worried about." She has reportedly been treated in the mental health system in Durant as well as during the time she was imprisoned, with the likelihood that these symptoms have [been] addressed through the prescriptions of various drugs.

(Administrative Record at 327-28.) With regard to her IQ test scores, Dr. McGirk opined that Childers had "[s]ignificant weaknesses in concentration abilities and associated calculation-oriented tasks. Non-verbal reasoning abilities were also quite low, suggesting that reasoning abilities of both an [sic] verbal and non-verbal level are within rather low limits."[18] Additionally, medical records from March and April 2009, indicate that Childers was suffering from major depressive disorder and generalized anxiety disorder.[19] Furthermore, the April 2009 report provided that Childers had "severe" problems in the area of friendship and social relations.[20] Moreover, prior to her incarceration, Childers received SSI benefits based on the level of her intellectual functioning.

---

[18] Administrative Record at 329.

[19] See id. at 243-48; 439-41.

[20] Id. at 439.

Based on the foregoing medical opinions, the Court finds that the ALJ's failure to follow the POMS guidelines, and consider whether Childers' borderline intellectual functioning combined with her other significant mental impairments, were medically equivalent to Listing 12.05C, was error. *See Shontos*, 328 F.3d at 424-27. Accordingly, the Court determines that remand is necessary. On remand, the ALJ must determine whether Childers' impairments are medically equivalent to Listing 12.05C.

### 2. Fully and Fairly Developed Record

Childers argues that the ALJ failed to fully and fairly develop the record in this matter. Specifically, Childers maintains that the ALJ should have obtained her previous social security disability case file in order to fully understand the reasons for the Commissioner granting her SSI benefits prior to her incarceration. Childers requests that this matter be remanded to the ALJ with directions that the ALJ to obtain her prior case file in order that this matter have a fully and fairly developed record.

An ALJ has a duty to develop the record fully and fairly. *Cox v. Astrue*, 495 F.3d 614, 618 (8th Cir. 2007); *Sneed v. Barnhart*, 360 F.3d 834, 838 (8th Cir. 2004); *Wilcutts v. Apfel*, 143 F.3d 1134, 1137 (8th Cir. 1998). Because an administrative hearing is a non-adversarial proceeding, the ALJ must develop the record fully and fairly in order that "'deserving claimants who apply for benefits receive justice.'" *Wilcutts*, 143 F.3d at 1138 (quoting *Battles v. Shalala*, 36 F.3d 43, 44 (8th Cir. 1994)); *see also Smith v. Barnhart*, 435 F.3d 926, 930 (8th Cir. 2006) ("A social security hearing is a non-adversarial proceeding, and the ALJ has a duty to fully develop the record."). "There is no bright line rule indicating when the Commissioner has or has not adequately developed the record; rather, such an assessment is made on a case-by-case basis." *Mouser v. Astrue*, 545 F.3d 634, 639 (8th Cir. 2008) (citation omitted).

Having reviewed the entire record, the Court finds that information regarding the Commissioner's reasons for granting Childers SSI benefits prior to her incarceration are pertinent to the resolution of Childers' present case. For example, in determining whether

Childers equals Listing 12.05C, the Court believes that it would be helpful to know whether Childers' mental functioning has improved, declined, or remained the same since prior to her incarceration. Accordingly, the Court determines that this matter should be remanded for further development of the record. *See Cox*, 495 F.3d at 618. On remand, the ALJ should obtain Childers' previous case file to fully and fairly develop the record in this case.

### C. Reversal or Remand

The scope of review of the Commissioner's final decision is set forth in 42 U.S.C. § 405(g) which provides in pertinent part:

> The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with our without remanding the cause for a rehearing.

42 U.S.C. § 405(g). The Eighth Circuit Court of Appeals has stated that:

> Where the total record is overwhelmingly in support of a finding of disability and the claimant has demonstrated his [or her] disability by medical evidence on the record as a whole, we find no need to remand.

*Gavin v. Heckler*, 811 F.2d 1195, 1201 (8th Cir. 1987); *see also Beeler v. Brown*, 833 F.2d 124, 127 (8th Cir. 1987) (finding reversal of denial of benefits was proper where "the total record overwhelmingly supports a finding of disability"); *Stephens v. Sec'y of Health, Educ., & Welfare*, 603 F.2d 36, 42 (8th Cir. 1979) (explaining that reversal of denial of benefits is justified where no substantial evidence exists to support a finding that the claimant is not disabled). In the present case, the Court concludes that the medical records as a whole do not "overwhelmingly support a finding of disability." *Beeler*, 833 F.2d at 127. Instead, the ALJ failed to: (1) consider whether Childers' borderline intellectual functioning combined with her other significant mental impairments, was medically equivalent to Listing 12.05C, and (2) fully and fairly develop the record with regard to Childers' previous social security disability case file.

## VI. CONCLUSION

The Court concludes that this matter should be remanded to the Commissioner for further proceedings. On remand, the ALJ must determine whether Childers' impairments are medically equivalent to Listing 12.05C. The ALJ should also obtain Childers' prior social security disability case file, in which the Commissioner granted her SSI benefits.

## VII. ORDER

For the foregoing reasons, it is hereby **ORDERED**:

This matter is **REVERSED** and **REMANDED** to the Commissioner of Social Security pursuant to sentence four of 42 U.S.C. § 405(g), for further proceedings as discussed herein.

DATED this 3rd day of January, 2013.

JON STUART SCOLES
CHIEF MAGISTRATE JUDGE
NORTHERN DISTRICT OF IOWA